(Not for publication)                                      Docket Entry No. 14

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                        :
VANCE WASHINGTON,                       :
                                        :
                Plaintiff,              :        Civil No. 03-5791 (RBK)
                                        :
        v.                              :
                                        :
COOPER HOSPITAL/UNIVERSITY              :
MEDICAL CENTER a/k/a THE COOPER         :
HEALTH SYSTEM,                          :
                                        :
                Defendant.              :
_____:

## <u>OPINION</u>

**KUGLER**, United States District Judge:

This matter comes before this Court on Defendant Cooper Health System's Motion

for Summary Judgment on all claims of Plaintiff Vance Washington's Complaint.  For the

reasons set forth below, Cooper's motion will be granted in part and denied in part.

## I.  BACKGROUND

Plaintiff Vance Washington ("Washington") is a former employee of Defendant

Cooper Health System ("Cooper").  In October 1998, Cooper hired Washington as a

patient care technician and a pool employee. (Pl. Dep. at 65-67).  Sometime in or around

September 2002, Washington requested and received a transfer to a regular, part-time

position at Cooper.  (<u>See</u> Letter from Grimes to Washington dated 9/27/02, at ¶ 1).

Following the transfer, Washington was assigned to work the 7:00 a.m. to 3:30 p.m. shift; however, because of the transfer to a new position, Washington's continued employment was subject to a 90 day probationary period. (Letter from Grimes to Washington dated 9/27/02, at ¶ 1.)  Washington deposed that he believed the probationary period meant only that he needed to wait 90 days for certain employee benefits; however, his supervisor, Vickie Riskie[1], deposed that during the probationary period employees are not subject to Cooper's progressive discipline policy and may be removed from the staff if "they are not pulling their load." (Pl. Dep. at 88; Riskie Dep. at 107-08.)

Cooper alleges that during his probationary period, Washington violated Cooper's attendance policies. (Def. Mem. at 18.)  In a meeting, Washington and other employees were verbally warned about leaving prior to the end of their shifts. (See Pl. Dep. at 99.) Washington was also written up on July 17, 2002 for an incident relating to his attitude and attendance. (See Written Warning dated 7/17/02, attached as Exhibit F to Def. Mem.) William Chambley, the director of employee and labor relations at Cooper, deposed that for payroll purposes there is a ten minute window that allows an employee to clock in/out ten minutes early/late and still be paid for a full shift. (Chambley Dep. at 26.)  However, in terms of the lateness policy, an employee is not granted that same ten minute window. (Chambley Dep. at 26.)  If an employee clocks in one minute after his shift began, he will be considered late for absenteeism/disciplinary purposes. (Chambley Dep. at 26.)

---

[1] In the various motion papers and exhibits thereto, Ms. Riskie's last name has been spelled many different ways.  For purposes of this opinion, the Court will rely on the spelling from Ms. Riskie's deposition transcript.

Similarly, Vickie Riskie deposed that all shift employees are expected to arrive on time to the hospital unit floor to which they are assigned, and they are expected to stay to the end of their shift. (See Riskie Dep. at 99.)  Based on these policies and Washington's time sheets,[2] Cooper asserts that prior to December 4, 2002, Washington had 1 call-out absence, 14 late arrivals, and 18 early departures. (Def. Mem. at 18.)

   On December 4, 2002, Washington's fiancé, Melvina Dillard, gave birth to his daughter at Cooper.[3] (See Pl. Dep. at 36.)  On December 6, 2004 both Ms. Dillard and the baby were discharged. (See Pl. Dep. at 47-48; Pl. Mem. at 9.)  On December 8, 2002, Ms. Dillard was re-hospitalized at JFK Hospital after suffering congestive heart failure. (See Pl. Dep. at 47-48; Pl. Mem. at 9.)  She was released on or about December 10, 2002. (See Pl. Dep. at 44, 48-50.)  Washington did not work on December 4, 9, 10, 14, or 15 of 2002, and he worked roughly two hours of his eight hour shift on December 5. (See Pl. Mem. 7-9, 11).

        There is some dispute as to the timing and content of Washington's communications with Cooper regarding his need to miss work after the birth of his daughter.  With respect to his absence on December 4, 2002, plaintiff deposed that he

---

[2]Although Cooper's brief includes clock in and clock out times for Mr. Washington for various dates, Cooper did not attach to its motion papers a copy of the time sheets from which it obtained that information. (See Def. Mem. at 2-4.)  However, the plaintiff included the time sheets as an exhibit to its opposition. (See Pl. Mem. at Exhibit E, Dep. Ex. R-3.)

[3]At all times relevant to the complaint, Washington has been unmarried, yet engaged to his fiancé, Melvina Dillard.

called the night supervisor before he was to start his shift at 7:00 a.m. and told her that his fiancé was in labor and he would not be able to work that day. (Pl. Dep. at 42-43.)  Vickie Riskie deposed that she first learned of the birth on December 4 when Washington mentioned it "in passing" when he stopped in on the floor where he and Riskie worked. (Riskie Dep. at 40-41.)  On December 5, Washington came to work but clocked out at 9:14 a.m. because he was exhausted and was "afraid he might injure a patient."  (Pl. Dep. at 45.)  Vickie Riskie deposed that she understood Washington's statement to be a threat that he might hurt patients. (See Riskie Dep. at 108.)

The next set of Washington's disputed absences occurred on December 9 and 10, 2002.  Washington deposed that on either the night of December 8 or the morning of December 9, he called Ms. Riskie and told her that his fiancé was in the hospital and he had to stay home with his daughter. (Pl. Dep. at 49.)  By contrast, Riskie deposed that it was not until December 10 that Washington called her and left a message stating only that he could not work that day because his girlfriend was in the hospital. (Riskie Dep. at 42.)  Riskie testified that after receiving Washington's message, she told Human Resources that Washington had called out due to the hospitalization of his girlfriend, and Human Resources advised that he was not eligible for leave on that basis.  (Riskie Dep. at 118-19; Chambley Dep. at 7-9, 13.)  Riskie testified that if Washington had told her that he needed that time off to care for a child, she would have relayed that information to Human Resources.  (Riskie Dep. at 111.)  Likewise, Chambley deposed that Washington would have been considered for leave if he had indicated that the need for leave was to

care for his baby as opposed to his hospitalized girlfriend. (Chambley Dep. at 35.)  In

spite of these contrary assertions by Riskie and Chambley, Washington deposed that on

either December 8 or 9 he did in fact tell Ms. Riskie explicitly that he needed the time off

to "stay home with my baby." (Pl. Dep. at 49.)

Washington returned to work on or about December 11, and both he and Riskie

agree that, at that time, Washington advised Riskie that he needed time off on December

14 and 15.  Washington deposed that he expressly stated that he "had to be home to care

for my daughter," but Riskie could not recall if he stated specifically why he needed the

leave. (Pl. Dep. at 53; Riskie Dep. at 51.)  Ms. Riskie advised Washington that she had to

check with her director, Denise Mealy, to obtain approval for the requested time off.

(Riskie Dep. at 52.)  Riskie told Washington she would speak with Ms. Mealy and

instructed him to wait for her return. (Riskie Dep. at 52.)  Ms. Mealy informed Riskie that

Washington qualified for time off on December 14 and 15; however, Washington left the

hospital before hearing back from Ms. Riskie regarding whether he was approved for

leave. (Riskie Dep. at 52-53.)  Washington did not call to follow up with Ms. Riskie or

anyone at Cooper to see if he had been approved for the time off, and Ms. Riskie never

contacted Washington to tell him he had been approved. (Pl. Dep. at 61; Riskie Dep. at

53).  Washington did not work his scheduled shifts on December 14 and 15.

On December 19, 2002, Ms. Riskie terminated plaintiff for excessive absenteeism

and a "threat" that "he was afraid he was going to hurt someone" while working with

patients.  (Riskie Dep. at 38, 108).  In making the decision to terminate, Ms. Riskie also

considered that Washington left early on December 11 without finding out whether he was approved for leave on December 14 and 15 when she had specifically asked him to wait for her to return from speaking with other management about the issue. (Riskie Dep. at 109; Riskie Note dated 12/19/02 attached to Def. Mem. as Exhibit I.)  Riskie deposed that she considered Washington's absences on December 2, 4, 5, 9, 10, 14, 15  as part of her termination decision. (Riskie Dep. at 106-09.)

Washington then reported his termination to the Department of Labor. (Pl. Mem. at 12.)  The Department of Labor ("DOL") interviewed Pat Delio, Cooper's Human Resources Manager, and issued a "Narrative Report of Investigation."[4] (See DOL Report, attached to Pl. Mem. as Exhibit A.)  The report indicated that the DOL investigator notified Mr. Delio that Cooper was in violation of the FMLA for unlawful termination. (DOL Report at 2.)  The DOL investigation terminated when Washington hired an attorney to file this suit in the hopes of receiving a greater amount of back wages. (DOL Report at 2.)

Shortly thereafter, on April 25, 2005, Washington filed his complaint against Cooper in the present action.  He asserts statutory claims pursuant to the Family and Medical Leave Act ("FMLA") and the New Jersey Family Leave Act ("NJFLA"), as well

---

[4] Cooper argues in its reply memorandum that the DOL Report should not be considered as admissible evidence pursuant to Federal Rules of Evidence 403 and 803(8)(C).  (Def. Reply Mem. at 1-7.)  Because this Court will deny Cooper's motion for summary judgment with respect to plaintiff's FMLA claim on the basis of other evidence and without any reliance on the DOL Report, the Court will not reach the issue of the admissibility of the DOL Report at this time.

as claims for  breach of contract, detrimental reliance, equitable estoppel, and unjust

enrichment. (See Compl. at Counts I-IV.)

## II.  STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In deciding whether there is a

disputed issue of material fact, a court must view the facts and all reasonable inferences

in a light most favorable to the nonmoving party. Anderson v. Consol. Rail Corp., 297

F.3d 242, 247 (3d Cir. 2002).

The moving party always "bears the initial responsibility of informing the district

court of the basis for its motion, and identifying those portions of the 'pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any,' which it believes demonstrate the absence of a genuine issue of

material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Where the

nonmoving party bears the burden of persuasion at trial, however, "the burden on the

moving party may be discharged by 'showing'–that is, pointing out to the district

court–that there is an absence of evidence to support the nonmoving party's case."  Id. at

325.  The non-moving party "may not rest upon the mere allegations or denials of" its

pleadings and must present more than just bare assertions, conclusory allegations or

suspicions to establish the existence of a genuine issue of material of fact.  Fed. R. Civ. P.

56(e); see Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989) (citation omitted).

## III.  DISCUSSION

Cooper seeks summary judgment on all four counts of Washington's complaint. Count I of the complaint alleges that Cooper violated the FMLA by (1) interfering with Washington's exercise of his rights under the Act, and (2) wrongfully terminating him. See 29 U.S.C. §§ 2615(a)(1), 2615(a)(2).  Count II makes similar claims under New Jersey's Family Leave Act. See N.J. Stat. Ann. § 34:11B(9).  This Court will deny Cooper's motion for summary judgment as it pertains to Counts I and II because there are genuine issues of material fact that preclude finding for the defendant as a matter of law. Count III of the complaint alleges a breach of contract based upon alleged terms of employment included in Cooper's Human Resources Policies & Procedures Manual. Because Washington is an at-will employee and there is no express or implied employment contract, this Court will grant Cooper's motion for summary judgment as it pertains to Count III.  Finally, Count IV asserts detrimental reliance, equitable estoppel and unjust enrichment claims based upon alleged representations made by Cooper in its Human Resources Policies and Procedures Manual and the Cooper Family and Medical Leave of Absence Policy.  This Court will grant Cooper's motion for summary judgment with respect to Count IV because the defendant highlighted an absence of evidence to support these claims and the plaintiff failed to present proof of a genuine issue of material fact.

**A.  FMLA Claim**

The FMLA is designed to balance the demands of the workplace with the needs of families in a manner that will minimize gender discrimination and ensure that leave is available for compelling medical and family needs.  See 29 U.S.C. §2601(b).  Under Section 2612, an eligible employee may take up to twelve weeks of unpaid leave within a twelve month period for any of the following reasons: (1) because of the birth of a son or daughter and the need to care for such son or daughter, (2) because of the placement of a son or daughter with the employee through adoption or foster care, or (3) because of the need to care for a spouse, parent, or child with a serious health condition.  29 U.S.C. § 2612(a)(1).

 To be eligible for FMLA leave, an employee must have been: (1) employed by the employer for at least twelve months, (2) employed for at least 1,250 hours of service during the twelve months leading up to the leave, and (3) employed at a workplace where 50 or more employees are employed within 75 miles of that work site.[5] 29 U.S.C. § 2611(2)(A)-(B); 29 C.F.R. § 825.110(a).  Eligible employees who take and return from FMLA leave are entitled to be restored to an equivalent position of employment with equivalent benefits, pay, and other terms. 29 U.S.C. § 2614(a).

To present a valid claim under the FMLA, an employee must demonstrate: (1) he is an eligible employee under the FMLA, (2) the defendant is an employer subject to the

---

[5]The parties do not dispute that Washington is an eligible employee and Cooper is an employer subject to the requirements of the FMLA. (See Pl. Mem. at 5.)

requirements of the FMLA, (3) he gave notice to the defendant employer of his intent to take FMLA leave, and (4) the defendant employer denied him the benefits to which he was entitled under the FMLA.  Parker v. Hahnemann Univ. Hosp., 234 F. Supp. 2d 478, 483-84 (D.N.J. 2002).

Here, Cooper's motion for summary judgment makes four primary arguments relating to Washington's alleged FMLA absences, all of which relate to the notice and entitlement prongs of a valid FMLA claim.  First, Cooper argues that Washington never requested FMLA leave.  Second, Cooper asserts that even if Washington did request leave, there is no qualifying event that entitled Washington to leave.  Third, the defendant contends that even if there is a qualifying event, Washington did not provide sufficient or timely notice of his need for leave.  And, fourth, even if Washington qualified for FMLA leave, Cooper argues that it had legitimate business reasons for terminating Washington due to his absenteeism and lateness which pre-dated the birth of his daughter.  This Court will first address whether there is a qualifying event entitling Washington to leave, and then will turn to Cooper's arguments regarding whether Washington gave proper notice of his intent to take leave and whether Cooper had otherwise valid business reasons for terminating him.

### 1.  FMLA Qualifying Event

An employee may take FMLA leave to care for a newborn or newly adopted child, or to care for a spouse, parent, or child with a serious health condition.  See 29 U.S.C. §2612(a)(1).  If leave is taken to care for a newborn child, the leave must be "because of

the birth of a son or daughter of the employee and in order to care for such son or daughter." 29 U.S.C. §2612(a)(1)(A).  The entitlement to up to twelve weeks of leave for care of a newborn child is available to an employee for a twelve month period beginning on the child's date of birth. 29 U.S.C. §2612(a)(2).

Cooper argues that there is no qualifying event for FMLA leave in this case because the hospitalization of a fiancé and the need to care for a child without a serious health condition do not entitle an employee to FMLA leave.   In other words, Cooper contends that the precipitating need for leave here is the medical emergency of Washington's fiancé, which created nothing more than the need to provide routine childcare for Washington's daughter, which in turn, is not covered by the FMLA.

In contrast, Washington contends, and the Court agrees, that the language of Section 2612(a)(1)(A) encompasses the present situation.  In other words, the need for leave is based upon the need to care for a newborn, not on a need for routine childcare or the hospitalization of Washington's fiancé.   Although the parties did not cite to, and the Court did not otherwise find, any cases interpreting Section 2612(a)(1)(A) in a similar context, an analysis of the language of the statute itself supports a finding that a qualifying event exists in this case.

Here, although there is a factual dispute as to when and whether Washington *notified* Cooper of his need to take leave to care for his daughter, it is clear that (1) Washington had a newborn daughter in early December 2002, and (2) during some of the days he missed work he was home to care for his daughter while the baby's mother was

ill.  Clearly, but for the recent birth of his daughter, Washington would not have had a

need to miss those days of work to care for the baby in December 2002.  This Court

thinks this is sufficient to establish that the need for leave was "because of the birth of a

son or daughter," particularly because the statute allows for FMLA leave to be taken

pursuant to Section 2612(a)(1)(A) at any time within the year following the birth of the

child.  See 29 U.S.C. §2612(a)(2).   In other words, the statute contemplates that a child

may be born and an employee may wait to take leave "because of" that birth until months

later.  Intervening circumstances may occur that influence the timing of the employee's

need to take leave to care for an infant child, but those factors do not change the

underlying context that the employee's leave ultimately occurs because he or she has an

infant child that needs care.

In the present case, although Melvina Dillard's illness made Washington's need

for leave an urgent one, that emergency does not alter the fact that a qualifying event

occurred.  Washington's daughter was just born and he needed to care for her – the

reasons why Melvina Dillard or anyone else could not care for the baby do not change

that.  As a result, Cooper's arguments fail to establish as a matter of law that a coverage-

triggering event did not occur pursuant to Section 2612(a)(1)(A).  Therefore, this court

will not grant Cooper's motion for summary judgment on plaintiff's FMLA claim on the

grounds that there was no qualifying event entitling Washington to FMLA leave.

## 2.  Sufficiency and Timeliness of Notice

To obtain FMLA leave, the employee must give proper notice to the employer of

his need for leave.[6] 29 C.F.R. §§ 825.302, 825.303.  If the need for leave is foreseeable, such as for an expected birth, an employee must provide the employer with 30 days notice before the leave is to begin. 29 C.F.R. § 825.302(a).  However, if the foreseeable birth or other qualifying event requires leave to begin in less than 30 days, the employee must give notice as soon as practicable. Id.  Similarly, if the need for leave is unforeseeable, the relevant regulations state that notice should be given as soon as practicable.  29 C.F.R. § 825.303(a).  "As soon as practical" ordinarily means verbal notification should be given to the employer within one or two days of the date when the need for leave becomes known to the employee. 29 C.F.R. § 825.302(b), 825.303(a).

Although there is no statutory definition as to what constitutes "sufficient notice," an employee is required to provide his employer with enough information for the employer to determine that the leave qualifies under the Act. See Price v. City of Fort Wayne, 117 F.3d 1022, 1026 (7th Cir. 1997) (holding that sufficient notice "is given when the employee requests leave for a covered reason"); Manuel v. Westlake Polymers, Corp., 66 F.3d 758, 764 (5th Cir. 1995) (stating that sufficient notice is given when the

_____

[6]The FMLA also imposes notice obligations on the employer.  Every covered employer is required to post on its premises, in conspicuous places, a notice explaining the FMLA's provisions and providing information regarding the procedures for filing a complaint for violation of the FMLA with the Wage and Hour Division.  29 C.F.R. § 825.200(a).  If an employer willfully violates the posting requirement, it is subject to a fine and cannot take any adverse action against an employee seeking FMLA leave on the basis that the employee did not furnish advance notice of the need to take FMLA leave. 29 C.F.R. § 825.300(b). Because this Court is able to dispose of Cooper's notice arguments on other grounds, the Court will not address at this juncture whether Cooper satisfied its own posting requirements.

information provided can reasonably apprise the employer of the employee's request to take time off for a serious health condition).

The regulations provide further guidance as to the content an employee's notice must contain. See 29 C.F.R. §§ 825.302(c), 825.303(b).  When requesting leave, an employee need not mention the FMLA by name.  29 C.F.R. §§ 825.302(c), 825.303(b).  Where the need for leave is foreseeable, an employee need only inform the employer that leave is needed for an FMLA covered purpose. 29 C.F.R. § 825.302(c).  Where the need for leave is unforeseeable, an employee need not expressly assert rights under the FMLA so long as he or she states that leave is needed. 29 U.S.C. § 825.303(b).

Cooper alleges that Washington's notice of the need for leave was insufficient as a matter of law and did not provide Cooper with reason to believe Washington was entitled to FMLA leave for care of a newborn.   Here, Cooper argues that Washington merely told Cooper that he needed leave because his fiancé was hospitalized. (Def. Mem. at 12. )

However, the deposition testimony creates a dispute of material fact regarding what Washington told Ms. Riskie regarding his need for leave in the time frame between the birth of Washington's daughter and the date of his termination.  For instance, Vickie Riskie deposed that on December 10, 2002, she received a voicemail from Washington stating that he could not work because his girlfriend was in the hospital. (Riskie Dep. at 42.)  In contrast, Washington deposed that he spoke with Riskie on December 8 or 9 and specifically told her he needed to be home to care for his newborn daughter. (Pl. Dep. at 49.)  Similarly, Washington deposed that on December 11 he told Riskie he needed time

off on December 14 and 15 to take care of his daughter, but Riskie deposed that she could

not recall whether on December 11 Washington told her why he needed time off on the

14th and 15th. (Pl. Dep. at 53; Riskie Dep. at 50-51.)   Furthermore, on December 11

Riskie's supervisor informed Riskie that Washington was entitled to leave on the 14th

and 15th, which suggests that a valid reason for FMLA leave may have been given by

Washington at that time. (See Riskie Dep. at 52.)  Ms. Riskie also admitted that

Washington had told her of the recent birth of his daughter, and that as a mother herself,

"it would cross your mind" that if a baby's mother is hospitalized there might be a

problem with providing care to the baby. (See Riskie Dep. at 115).

       Given these contradictions in the deposition testimony, a genuine issue of material

fact arises as to whether Washington provided sufficient notice of his need for leave. See

Williams Serv. Group v. O.B. Cannon & Son, No. 90-7732, 1992 WL 189397, at *3 (E.D.

Pa. 1992)(noting that numerous conflicts in deposition testimony constitute genuine

issues of material fact). Viewing the inferences from the facts in the record in a light most

favorable to the plaintiff, a reasonable jury could find that Washington communicated to

Cooper his need to take care of his newborn daughter. See Bartnicki v. Vopper, 200 F.3d

109, 114 (3d Cir. 1999) (recognizing the duty to view inferences in a light most favorable

to the non-moving party);  Zawadowicz v. CVS Corp., 99 F. Supp. 2d 518, 529 (D.N.J.

2000) (finding that even where plaintiff did not expressly provide the employer with a

reason for needing leave, a reasonable juror could find sufficient evidence that notice was

adequate and the employer otherwise knew the explanation for plaintiff's absences.)  In

any event, this determination of whether the content of the notice given by Washington

was adequate under the FMLA is a question of fact and credibility best suited for the jury.

See Hopson v. Quitman Co. Hospital and Nursing Home, Inc., 126 F.3d 635, 640 (5th Cir.

1997)(". . . it is our opinion that the adequacy of Hopson's notice is a fact issue. . . . Such

determinations are better left to the jury with its traditional function of assessing human

behavior and expectations."). Therefore, because the contradictions in deposition

testimony create a genuine issue of material fact regarding the adequacy of notice in this

matter, summary judgment on the issue is inappropriate.

Furthermore, the regulations themselves highlight that it is the employer's

responsibility to determine the applicability of the FMLA and to consider requested leave

as FMLA leave.  Specifically, the regulations provide that if an employee has not

provided enough information to put the employer on notice that FMLA-qualified leave is

needed, the employer is expected to obtain "any additional required information through

informal means." 29 C.F.R. § 825.303(b).  "In all circumstances, it is the employer's

responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice

of the designation to the employee." 29 C.F.R. § 825.208(a).  Therefore, the onus was on

Cooper to gather information, make an FMLA determination, and communicate that

decision to Washington.

In addition to challenging the content of Washington's notice for the need to take

leave, Cooper also challenges the timing of the notice.  Cooper asserts that because the

alleged need for Washington's leave was to care for a newborn, that need was foreseeable

and required 30 days advance notice to the employer.  However, the 30 day requirement is not mandatory even if the need for leave is foreseeable. 29 C.F.R. § 825.302(a).  If 30 days notice is not feasible, notice must only be given as soon as practicable. See 29 C.F.R. § 825.302(a)-(b).

Moreover, the  issue of whether need is foreseeable or unforeseeable is largely a jury determination. Zawadowicz, 99 F. Supp. 2d at 530.  Here, although Washington knew his fiancé was pregnant with his child, he presumably could not know that the child would be born 24 days early. (See Pl. Dep. at 36.)  Similarly, although he knew that he would be having a child, he could not know that the baby's mother would be unexpectedly incapacitated and he would suddenly have the primary responsibility to take care of his daughter in the days following her birth. See 29 C.F.R. § 825.302(a) (noting that "a lack of knowledge when leave will begin, a change in circumstances, or medical emergency" will remove the 30 day notice requirement even if the underlying need for leave is foreseeable).  Therefore, whether Washington gave notice as soon as practicable under the circumstances is not something that this Court will decide on summary judgment.  It is a factual determination better left for the jury.

### 3.  Legitimate Business Reasons for Termination

As an alternative to the notice and entitlement arguments, Cooper asserts that even if Washington was entitled to FMLA leave, Cooper had legitimate reasons for terminating him that pre-dated the birth of his daughter.  The relevant regulations provide that an employer may defend against an FMLA charge by arguing that the employee would have

been terminated regardless of any FMLA-protected absences. See 29 C.F.R. § 825.216(a);

Marrero v. Camden Cty. Bd. of Soc. Servs., 164 F. Supp. 2d 455, 466 (D.N.J. 2001).

Where a plaintiff provides direct evidence that his FMLA leave was a substantial factor in

the decision to fire him, the burden of persuasion shifts to the employer to show that more

likely than not, the employer would have terminated the employee absent consideration of

the FMLA-protected leave. Conshenti v. Public Serv. Elec. & Gas Co., 364 F.3d 135, 147

(3d Cir. 2004) (relying upon Price Waterhouse v. Hopkins, 490 U.S. 228 (1989)).  Here,

Cooper asserts that prior to the birth of Washington's daughter, he had 1 call-out absence,

14 late arrivals, and 18 early departures during his 90 day probationary period.[7]  (Def.

Mem. at 18.)   As a result, Cooper contends it was justified in terminating the plaintiff

despite his FMLA claim.

        Nevertheless, the evidence in the record creates a genuine issue of material fact as

to whether Cooper has a valid defense pursuant to Section 825.216(a).  In the present

case, Viskie Riskie deposed that when she fired Washington she considered his absences

on December 2, 4, 9, 10, 14, and 15 as part of her termination decision. (Riskie Dep. at

106-09.)  Of those six dates, only one of them is an absence pre-dating Washington's

---

        [7] The Court notes that Washington's clock in and clock out times included in
Cooper's brief show that on ten of the fourteen alleged "late arrival" days, Washington
clocked in within ten minutes of the beginning of his shift. On the other four "late arrival"
days he clocked in within twenty minutes of the beginning of the shift.  Similarly, on all
of the eighteen alleged "early departure" days, Washington clocked out within fifteen
minutes of the end of his shift, and eight of those clock outs times were within five
minutes of the end of his shift. (See Def. Mem. at 2-4; see also Time Sheets attached as
Dep. Ex. R-3 to Exhibit E of Pl. Mem.)

allegedly FMLA-protected absences. The absences on December 4, 9, 10, 14 and 15 are all at issue here as disputed FMLA leave.  Therefore, at the very least there is a question of material fact as to whether Cooper "more likely than not" would have fired Washington absent consideration of his disputed FMLA-absences after December 4, 2002.

Aside from the "more likely than not" inquiry under Conoshenti, there is additional case law from this jurisdiction which states that an employer foregoes a retaliation defense based on otherwise legitimate business reasons, if the employer even considers any allegedly FMLA-protected absences in making the termination decision. Marrero, 164 F. Supp. 2d at 466 ("FMLA-protected absences may not even be considered in deciding whether to terminate an employee for excessive absenteeism.") (citing Viereck v. City of Gloucester City, 961 F. Supp. 703, 708 (D.N.J. 1997)).  Because Riskie's deposition testimony clearly states that she considered the disputed FMLA-absences as part of the termination decision, at a minimum, an issue of material fact prevents the Court from granting summary judgment in favor of Cooper on the grounds that Cooper had otherwise legitimate reasons for terminating the plaintiff.

Overall, the Court will deny Cooper's motion for summary judgment on plaintiff's FMLA claim because: (1) Cooper has not pointed to sufficient evidence to demonstrate that Washington's leave was not "because of the birth of his daughter and the need to care for her"; (2) genuine issues of material fact exist regarding the adequacy and timeliness of the notice Washington provided for his need for leave; and (3) a genuine issue of material

fact exists concerning whether Washington would have been terminated had he not attempted to take FMLA-leave.

**B. NJFLA Claim**

The NJFLA is similar to the FMLA in terms of its notice and entitlement provisions.[8]  Like the FMLA, the NJFLA entitles an eligible employee to up to twelve weeks of leave in order to care for a newly born child, and such leave may commence at any time within a year after the child's birth.  See N.J. Stat. Ann. §34:11B(4); N.J. Admin. Code §13:14-1.5(a).  Furthermore, like the notice provisions in the FMLA regulations, the NJFLA regulations require that an employee who takes leave to care for a newborn must provide the employer with notice no later than 30 days prior to the commencement of the leave, except where emergent circumstances warrant shorter notice.  See N.J. Admin. Code §13:14-1.5(c)(1).  Given these similarities between the notice and entitlement provisions related to the FMLA and NJFLA, the Court's analysis of notice and entitlement under the FMLA also applies to Cooper's challenge to plaintiff's NJFLA claim.  The Court will deny Cooper's motion for summary judgment with respect to plaintiff's NJFLA claim for the same, foregoing reasons that it is denying Cooper's motion with respect to plaintiff's FMLA claim.

---

[8] However, the state regulations issued pursuant to the NJFLA do not appear to contain a provision quite like 29 C.F.R. § 825.216(a).  Therefore, Cooper's argument that it had legitimate business reasons for terminating the plaintiff is best addressed as a defense under the FMLA only.

### C.  Breach of Contract Claim

In its brief, Cooper argues that it is entitled to summary judgment on plaintiff's breach of contract claim because plaintiff has failed to establish the existence of a written or implied employment contract.  In response, Washington contends that Cooper's Human Resources Policies and Procedures Manual ("Manual") created an enforceable, implied promise that Cooper would follow the prescribed disciplinary procedure before terminating an employee.  Because Cooper allegedly terminated Washington without following those procedures, the plaintiff contends that it breached the allegedly enforceable promise in the Manual.

To state a valid breach of contract claim, plaintiff must establish that (1) a valid contract existed between the plaintiff and defendant, (2) the defendant breached the contract, (2) the plaintiff performed his obligations under the contract, and (4) the plaintiff incurred damages as a result of the breach.  See Nat'l Util. Serv., Inc. v. Chesapeake Corp., 45 F. Supp. 2d 438, 448 (D.N.J. 1999).  Here, the threshold issue is whether a valid contract existed.  Because Washington does not argue for, or present any evidence of, an express employment contract, the analysis must focus on whether the language of the Manual contains an implied, yet contractually enforceable condition of employment.

In New Jersey, an employment manual may alter an employee's at-will employment status by creating an implied contract between the employer and employee.  Woolley v. Hoffmann-La Roche, Inc, 491 A.2d 1257, 1258 (N.J. 1985), modified on

other grounds, 499 A.2d 515 (N.J. 1985).  An implied promise in an employment

handbook that an employee will only be fired for cause, or that an employee will only be

fired after certain disciplinary procedures, may be enforceable if those promises could

reasonably be understood as creating binding obligations.  Witkowski v. Thomas J.

Lipton, Inc., 643 A.2d 546, 553 (N.J. 1994); Woolley, 491 A.2d at 1264.

Nevertheless, where an employment manual contains a clear and prominent

disclaimer, no contract will be implied.  Wade v. Kessler Inst., 798 A.2d 1251, 1258 (N.J.

2002); Woolley, 491 A.2d at 1257.  To be adequate, a disclaimer should appear in a

prominent position and should state: (1) that there is no promise of any kind contained in

the manual; (2) that regardless of the contents of the manual, the employer remains free to

change all working conditions without consultation or agreement; and (3) that the

employer retains the power to fire anyone with or without cause.  Nicosia v. Wakefern,

643 A.2d 554, 560 (N.J. 1994).  Most adequate disclaimers are somehow set off from the

other information in the manual through the use of a different typeface or border.  See id.

at 561.  Furthermore, when the content and placement of a disclaimer are uncontroverted,

the effectiveness of the disclaimer can be resolved as a matter of law. Wade, 798 A.2d at

1259.

Here, Cooper's Manual contains a prominent disclaimer.  It reads:

The Cooper Health System retains the right, at its sole discretion, to modify
or eliminate any policy or benefit described in this manual with or without
notice.  These written policies and procedures are designed to increase
understanding, eliminate the need for individual decisions on matters of
System wide polices and help assure uniformity and fairness throughout the
organization.

> This manual does not constitute a guarantee that an individual's
> employment will continue for any specific period of time or end only under
> certain conditions.  Nothing in this manual constitutes an express or implied
> contract of employment or warranty of any benefits.  Employment at the
> Cooper Health System is a voluntary employment-at-will relationship for no
> definite period of time.  Both the Cooper Health System and the employee
> have the right to terminate the employment relationship for any reason with
> or without cause or notice at any time.

(See Manual at "Introduction" attached to Def. Mem. as Exhibit N.)  The disclaimer

physically appears in the "Introduction" section and is set off in bold type and surrounded

by a border.  In other words, the disclaimer is bolded, bordered, and prominently placed

in the front of the Manual, and affirms that (1) nothing in the Manual creates any implied

contract of employment, (2) the employment is at-will, and (3) the employer retains the

right to terminate with or without cause at any time.  Given these details, the Court cannot

credit the plaintiff's conclusory allegation that "there is no dispute that there is no clear

and prominent disclaimer" in the Manual.  Instead, because the Manual contains a clear

and conspicuous notice that satisfies the requirements for an adequate disclaimer, this

Court finds that there was no implied, employment contract created by the Manual.  Thus,

Cooper is entitled to summary judgment on plaintiff's breach of contract claim because

the record demonstrates that a valid contract did not exist between the plaintiff and

defendant.

### D. Detrimental Reliance, Equitable Estoppel, Unjust Enrichment Claims

Plaintiff brings claims for detrimental reliance, equitable estoppel, and unjust

enrichment on the basis that, prior to terminating Washington, Cooper failed to comply

with the progressive discipline procedure outlined in the Manual and the Cooper Health System Family and Medical Leave of Absence Policy.[9]  Cooper asserts it is entitled to summary judgment on these claims because: (1) the plaintiff could not have reasonably relied on any statements in the Manual given the clear and prominent disclaimer, and (2) there is no evidence that Cooper retained any benefit from Washington's termination or that retention of any such benefit would be unpaid.

To present a claim for equitable estoppel, a party must show (1) a representation or misrepresentation, (2) made with knowledge by the representor that it would induce action, and (3) detrimental reliance on the representation by the claimant. Barone v. Leukemia Soc'y of Am., 42 F. Supp. 2d 452, 464 (D.N.J. 1998).  In turn, "substantial detrimental reliance is not enough to establish an equitable estoppel claim, rather "only justified and reasonable reliance warrant the application of equitable estoppel." Gen. Accident Ins. Co. v. New York Marine & Gen. Ins. Co., 727 A.2d 1050, 1055 (N.J. Super. 1999) (citing Palatine I v. Planning Bd., 628 A.2d 321 (N.J. 1993)).

Here, the plaintiff has failed to point to any facts to establish: (1) that Cooper's representations regarding its progressive discipline policies were made with knowledge that such representations would induce action, or (2) that Washington reasonably and justifiably relied on those representations.  As discussed above, the Manual had a clear

_____

[9] The Cooper Health System Family and Medical Leave of Absence Policy is contained within the Manual at Section III, Policy Number 3.010. (See Manual at "Table of Contents" attached to Def. Mem. as Exhibit N; see also "Policy" attached to Pl. Mem. as Exhibit D.)

and prominent disclaimer stating that employment is at-will and can be terminated

without notice and without cause at any time.  The disclaimer also clearly states that (1)

Cooper retained the sole discretion to modify any policies or procedures contained within

the Manual at any time, and further (2) that the Manual does not contain any guarantee

that employment could only terminate under certain conditions.  (See Manual at

"Introduction" attached to Def. Mem. as Exhibit N.)  The language and prominence of

these disclaimers tend to negate the idea that Cooper wrote the Manual intending or

knowing that its employees would treat the discipline guidelines as enforceable

prerequisites to termination.  In fact, the disclaimers advise employees to do just the

opposite.  Moreover, the plaintiff fails to present any evidence which would create a

genuine issue of material fact regarding whether Cooper acted with such knowledge.

Similarly, aside from the conclusory allegation that "there are triable issues as to whether

plaintiff detrimentally relied on the warning procedures" in the Manual, the plaintiff does

not make any argument or present any facts to demonstrate the reasonableness or

justification for his alleged reliance.  Such bare and conclusory allegations are insufficient

to survive a motion for summary judgment. See Fed. R. Civ. P. 56(e); Jalil v. Avdel

Corp., 873 F.2d 701, 708 (3d Cir. 1989) (citation omitted).  Therefore, the Court will

grant Cooper's motion for summary judgment with respect to the equitable estoppel and

detrimental reliance claims.

　　　　Finally, to maintain an unjust enrichment claim, a party must show both that the

defendant received a benefit and that retention of that benefit would be unjust.  VRG

<u>Corp. v. GKN Realty Corp.</u>, 641 A.2d 519, 526 (N.J. 1994)(citation omitted).  Here, Cooper points out that Washington has failed to present any proof that Cooper received any benefit from the termination of Washington or that retention of that benefit would go unpaid.  The plaintiff literally fails to present any facts or discussion of the unjust enrichment claim in its opposition papers.  Because the defendant has shown an absence of evidence supporting the plaintiff's claim to which the plaintiff has not responded with any proof of a genuine issue of material fact, the Court will grant Cooper's motion for summary judgment on the unjust enrichment count.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant Cooper's Motion for Summary Judgment with Respect to Claims III and IV of plaintiff's Complaint and will deny Cooper's Motion for Summary Judgment with respect to Claims I and II of plaintiff's Complaint.

The accompanying Order shall issue today.


Dated:  12-2-05                                                    s/  Robert B. Kugler
                                                                          ROBERT B. KUGLER
                                                                          United States District Judge